IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
District Judge Zita L. Weinshienk

Civil Action No. 08-cv-02007-ZLW

FREDRICK L. JONES,

    Petitioner,

v.

STEVE HARTLEY, Warden, Limon Correctional Facility, and
THE ATTORNEY GENERAL OF THE STATE OF COLORADO,

    Respondents

---

ORDER ON PETITION FOR HABEAS CORPUS

---

Weinshienk, J.

This matter is before the Court on Petitioner Fredrick Jones' Petition Under 28 U.S.C. § 2254 For Writ of Habeas Corpus ("Petition") (Doc. # 3).[1]  Respondents answered the Petition (Doc. # 21), and Petitioner filed a Traverse (Doc. # 26).  After reviewing the pertinent portions of the record in this case including the Petition, the Answer, the Traverse, and the state court record, the Court concludes that the Petition should be denied.

I.    Background

In 1987, Petitioner was charged in El Paso County District Court ("trial court") with nine counts of forcible sexual assault, kidnapping and robbery, allegedly committed

---

[1] Because Petitioner appears *pro se*, the Court construes his filings liberally.  *See Haines v. Kerner*, 404 U.S. 519, 520-21 (1972).  However, the Court does not serve as his advocate. *See Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991).

1

against four different victims on three separate dates.  Pursuant to a plea agreement, in September 1998, Petitioner pled guilty to one count of second-degree kidnapping and one count of first-degree sexual assault.  In November 1988, the trial court imposed two forty-five year sentences, to be served consecutively.

Petitioner filed a Colo. R. Crim. P. 35(c) motion in April 1991.  For unknown reasons, the motion remained pending in the trial court for several years.  In 1996, Petitioner filed a supplemental and amended Crim. P. 35(c) motion.  The two motions together raised three claims of ineffective assistance of counsel, and were summarily denied by the trial court in 1998.  After an appeal to the Colorado Court of Appeals (the "CCA"), in 1999, the case was remanded to the trial court with directions to adjudicate the merits of the ineffective assistance claims.  The trial court again summarily denied the motion, and in 2002, the CCA again remanded Petitioner's case to the trial court with directions to adjudicate the merits of his ineffective assistance claims.

In November 2004, the trial court held an evidentiary hearing on Petitioner's ineffective assistance claims.  After conclusion of the hearing, the trial court denied all of Petitioner's claims on their merits.  Answer at Exhibit A, Part 2, p. 26-29.  Petitioner filed an appeal with the CCA, and on May 24, 2007, the appellate court rejected his claims. *See People v. Jones*, No. 05CA0838 (Colo. App. May 24, 2007) (unpublished decision) (Answer at Exhibit A, Part 1, p. 29-42).  Petitioner filed a petition for writ of certiorari with the Colorado Supreme Court on July 9, 2007, which was denied on October 9, 2007.  Answer at Exhibit A, Part 1, p. 2-3.

Petitioner filed the instant *pro se* Petition for Writ of Habeas Corpus on September 17, 2008, arguing that: (1) trial counsel provided ineffective assistance by

failing to pursue an insanity or impaired mental condition defense; (2) trial counsel provided ineffective assistance by failing to file motions to suppress; (3) trial counsel coerced Petitioner's guilty plea by misrepresenting the sentence he would receive; (4) the trial court used an incorrect legal standard to adjudicate Petitioner's ineffective assistance claims; and (5) the trial court violated Petitioner's right to due process during the post-conviction evidentiary hearing.

II.     Legal Standard

In the course of reviewing state criminal convictions in federal habeas corpus proceedings, a federal court does not sit as a super-state appellate court. *See Estelle v. Mcguire*, 502 U.S. 62, 67-68 (1991); *Lewis v. Jeffers*, 497 U.S. 764, 780 (1990). "When a federal district court reviews a state prisoner's habeas petition pursuant to 28 U.S.C. § 2254 . . . . [it] does not review a judgment, but the lawfulness of the petitioner's custody *simpliciter*." *Coleman v. Thompson*, 501 U.S. 722, 730 (1991) (internal quotations and citations omitted).  The exhaustion of state remedies requirement in federal habeas cases dictates that a state prisoner must "give the state courts one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process." *O'Sullivan v. Boerckel*, 526 U.S. 838, 845 (1999).

Because Petitioner filed his Petition after April 24, 1996, the effective date of the Antiterrorism and Effective Death Penalty Act of 1996 (the "AEDPA"), that statute governs the Court's review. *Cannon v. Mullin,* 383 F.3d 1152, 1158 (10th Cir. 2004) (citing *Rogers v. Gibson,* 173 F.3d 1278, 1282 n. 1 (10th Cir. 1999)).  Under the AEDPA, a district court may only consider a habeas petition when the petitioner argues

that he is "in custody in violation of the Constitution or laws or treaties of the United

States." 28 U.S.C. § 2254(a).

Title 28 U.S.C. § 2254(d) provides that a writ of habeas corpus may not be

issued with respect to any claim that was adjudicated on the merits in state court unless

the state court adjudication:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

Claims of legal error and mixed questions of law and fact are reviewed pursuant

to 28 U.S.C. § 2254(d)(1). *See Cook v. McKune*, 323 F.3d 825, 830 (10th Cir. 2003).

The threshold question pursuant to § 2254(d)(1) is whether Petitioner seeks to apply a

rule of law that was clearly established by the Supreme Court at the time his conviction

became final. *See Williams v. Taylor*, 529 U.S. 362, 390 (2000). Clearly established

federal law "refers to the holdings, as opposed to the dicta, of [the Supreme] Court's

decisions as of the time of the relevant state-court decision." *Id.* at 412. Furthermore,

> clearly established law consists of Supreme Court holdings in cases where the facts are at least closely-related or similar to the case *sub judice*. Although the legal rule at issue need not have had its genesis in the closely-related or similar factual context, the Supreme Court must have expressly extended the legal rule to that context.

*House v. Hatch*, 527 F.3d 1010, 1016 (10th Cir. 2008).

If there is no clearly established federal law, that is the end of the Court's inquiry

pursuant to § 2254(d)(1).  *See id.* at 1018.  If a clearly established rule of federal law is implicated, the Court must determine whether the state court's decision was contrary to or an unreasonable application of that clearly established rule of federal law.  *See Williams*, 529 U.S. at 404-05.

> A state-court decision is contrary to clearly established federal law if: (a) "the state court applies a rule that contradicts the governing law set forth in Supreme Court cases"; or (b) "the state court confronts a set of facts that are materially indistinguishable from a decision of the Supreme Court and nevertheless arrives at a result different from [that] precedent."  *Maynard* [*v. Boone*], 468 F.3d [665,] 669 [(10th Cir. 2006)] (internal quotation marks and brackets omitted) (quoting *Williams*, 529 U.S. at 405).  "The word 'contrary' is commonly understood to mean 'diametrically different,' 'opposite in character or nature,' or 'mutually opposed.'"  *Williams*, 529 U.S. at 405 (citation omitted).
>
> A state court decision involves an unreasonable application of clearly established federal law when it identifies the correct governing legal rule from Supreme Court cases, but unreasonably applies it to the facts.  *Id.* at 407-08.  Additionally, we have recognized that an unreasonable application may occur if the state court either unreasonably extends, or unreasonably refuses to extend, a legal principle from Supreme Court precedent to a new context where it should apply.

*House*, 527 F.3d at 1018.

The Court's inquiry pursuant to the "unreasonable application" clause is an objective one.  *See Williams*, 529 U.S. at 409-10.  "[A] federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly.  Rather that application must also be unreasonable."  *Id.* at 411.  "[A] decision is 'objectively unreasonable' when most reasonable jurists exercising their

independent judgment would conclude the state court misapplied Supreme Court law." *Maynard*, 468 F.3d at 671. "[O]nly the most serious misapplications of Supreme Court precedent will be a basis for relief under § 2254." *Id.*

Claims of factual error are reviewed pursuant to 28 U.S.C. § 2254(d)(2). *See Romano v. Gibson*, 278 F.3d 1145, 1154 n.4 (10th Cir. 2002). Section 2254(d)(2) allows a court to grant a writ of habeas corpus only if the state court decision was based on an unreasonable determination of the facts in light of the evidence presented. Pursuant to § 2254(e)(1), the Court must presume that the state court's factual determinations are correct and Petitioner bears the burden of rebutting the presumption by clear and convincing evidence. "The standard is demanding but not insatiable . . . [because] '[d]eference does not by definition preclude relief.'" *Miller-El v. Dretke*, 545 U.S. 231, 240 (2005) (quoting *Miller-El v. Cockrell*, 537 U.S. 322, 340 (2003)).

Finally, the Court "owes deference to the state court's *result*, even if its reasoning is not expressly stated." *Aycox v. Lytle*, 196 F.3d 1174, 1177 (10th Cir. 1999). Therefore, the Court "must uphold the state court's summary decision unless [an] independent review of the record and pertinent federal law persuades [the Court] that its result contravenes or unreasonably applies clearly established federal law, or is based on an unreasonable determination of the facts in light of the evidence presented." *Id.* at 1178. "[T]his 'independent review' should be distinguished from a full *de novo* review of the petitioner's claims." *Id.*

III.   Discussion

As a preliminary matter, Respondents do not challenge the timeliness of the

Petition under the one-year limitation period set forth in 28 U.S.C. § 2244(d), nor do they argue that Petitioner failed to exhaust his state court remedies pursuant to 28 U.S.C. § 2254(b). Accordingly, the Court will address the merits of Petitioner's claims.

A. Claims One and Two

In his first claim, Petitioner argues that he was provided ineffective assistance of counsel because trial counsel failed to assert a defense of insanity or impaired mental condition. Petition at 11. He contends that trial counsel failed to investigate whether a head injury that Petitioner suffered as a child could have been used as grounds for an incompetency defense. *Id.* at 12. In his second claim, Petitioner argues that he was provided ineffective assistance because trial counsel withdrew motions to suppress DNA evidence, identification testimony and Petitioner's initial statement to the police. *Id.* at 14-16. The appellate court addressed claims one and two together, and found the following:

> Defendant first argues that the trial court erred in rejecting his claims that plea counsel was ineffective for not pursuing (1) a defense of insanity or impaired mental capacity, and (2) his motions to suppress DNA evidence and incriminating statements. However, defendant has not met his burden of proof concerning these claims. Defendant did not present evidence that would establish either deficient performance or prejudice as to these claims, nor can we find any such evidence in the record. [Citation omitted].
>
> Furthermore, defendant has not asserted, let alone proved, that he would not have pleaded guilty but for the alleged errors. [Citations omitted]. We do not agree with defendant that these asserted deficiencies rise to the level of a "constructive denial of counsel," such that prejudice may be presumed.

Answer at Exhibit A, Part 1, p. 32.

It was clearly established when Petitioner was convicted that a defendant has a

right to effective assistance of counsel.  *See Strickland v. Washington*, 466 U.S. 668 (1984).  To establish that his trial counsel was ineffective, Petitioner must demonstrate both that counsel's performance fell below an objective standard of reasonableness and that counsel's deficient performance resulted in prejudice to his defense.  *See id.* at 687-88.  In addition, "[j]udicial scrutiny of counsel's performance must be highly deferential."  *Id.* at 689.  There is a "strong presumption" that counsel's performance falls within the range of "reasonable professional assistance."  *Id.*  It is Petitioner's burden to overcome this presumption by showing that the alleged errors were not sound strategy under the circumstances.  *See id.*  Under the prejudice prong, Petitioner must establish "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different."  *Id.* at 694.  If Petitioner fails to satisfy his burden with regard to either prong of the Strickland test, his ineffective assistance of counsel claim must be dismissed.  *See id.* at 697.  Finally, ineffective assistance of counsel claims are mixed questions of law and fact.  *See id.* at 698.

    1.  Failure to Assert Competency Defense

Petitioner's trial counsel, Terry Perlet, raised Petitioner's competency in September 1988.  Answer at Exhibit A, Part 2, p. 7.  A psychiatrist, Dr. Roberts, was then appointed by the trial court to conduct a competency examination.  *Id.* at 8.  Dr. Roberts issued a report detailing his finding that Petitioner was competent.  *Id.*  In the competency report, Dr. Roberts noted that Petitioner stated "that he has had a number of problems since adolescence, and feels that a head injury had contributed to many of these difficulties;" but these "difficulties" were apparently in the nature of "forgetting things" and not being able to "think clearly."  Answer at 31.  On September 12, 1988, the

trial court held a competency hearing and found Petitioner competent to stand trial. Answer at Exhibit A, Part 2, p. 8.  Petitioner now argues that "Dr. Roberts' assessment and report should not have been the end of counsel's investigation - it should have been the beginning because it should have alerted him to the need to launch his own investigation by interviewing the same people that Dr. Roberts had interviewed."  Traverse at 6 (emphasis in original).  Petitioner asserts that the friends and family members interviewed by Dr. Roberts "were unified in expressing their beliefs that [Petitioner] 'has never been right' since the [head] injury" he suffered as an adolescent.  *Id.*

At the post-conviction hearing held on November 10, 2004, Petitioner's trial counsel testified as follows:

> Q: How early did Mr. Jones display any behavior that ultimately prompted you to get Dr. Roberts involved?
>
> A: It wasn't behavior per se.  It was more my concern of: Am I missing something? Why do I see this? Why did my investigator do this and why is he not seeing it?  Am I missing something?  Is there a mental issue here?  That's why I wanted an expert to come in and say, no, he knows what's going on.
>
> Q: Did [Mr. Jones] display this, "No, I'm not recognizing what I'm seeing" early on in the investigation?
>
> A: He was a very active client.  He knew what he was doing.  He had been through the system before.  From the beginning he displayed an understanding of what was happening, what the defense would be, and even he was involved in deciding whether or not to try the DNA.  I brought the DNA up.
>
> Q: So his kind of mental attitude was kind of the same throughout your representation, but at some point you decide just to be sure to get Dr. Roberts involved?
>
> A: Yes, I did not want to make a mistake.  I wanted to make sure I

>     wasn't missing something.

Trial Court Transcript, 2004-11-10, p. 56-57.

"It is well-settled that the criminal trial of an incompetent defendant violates due process." *McGregor v. Gibson*, 248 F.3d 946, 951 (10th Cir. 2001) (en banc) (quoting *Medina v. California*, 505 U.S. 437, 453 (1992) (internal quotation marks omitted)). However, Petitioner must point to facts that suggest that he lacked "'sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding'" or "'a rational as well as factual understanding of the proceedings against him'" such that he lacked competency to stand trial. *Id.* at 952 (quoting *Dusky v. United States*, 362 U.S. 402, 402 (1960)). Further, the Tenth Circuit has recognized that "'[w]ith respect to the prejudice prong of a claim of ineffective assistance of counsel, a petitioner need only demonstrate a reasonable probability that he was incompetent, sufficient to undermine confidence in the outcome.'" *Williamson v. Ward*, 110 F.3d 1508, 1519 (10th Cir. 1997) (quoting *Bouchillon v. Collins*, 907 F.2d 589, 595 (5th Cir. 1990)).

Here, the record lacks evidence suggesting that Movant did not understand the proceedings against him or was unable to communicate with his attorney with a reasonable degree of rational understanding. To the contrary, Mr. Perlet testified that Petitioner was actively involved in his own case and that counsel had no reason to doubt his competency, but instead raised the issue merely to be certain that he was not overlooking a possible defense. *See* Trial Court Transcript, 2004-11-10, p. 56-57. In response, Petitioner asserts nothing more than that further investigation would have revealed that he was not "right" since his head injury; however, conclusory allegations without supporting factual averments are insufficient to support a claim of ineffective

assistance of counsel.  *United States v. Fisher*, 38 F.3d 1144, 1147 (10th Cir. 1994).  Petitioner has not "demonstrate[d] a reasonable probability that he was incompetent, sufficient to undermine confidence in the outcome," and therefore, the Court finds that counsel was not objectively unreasonable for failing to further investigate the issue of Petitioner's competence.  *Williamson*, 110 F.3d at 1519.  Accordingly, the Court concludes that the state court's decision was not contrary to or an unreasonable application of clearly established federal law, nor was it an unreasonable determination of the facts presented in the state court proceeding and Petitioner is not entitled to federal habeas relief on his first claim.

       2.  Failure to Pursue Suppression

In his second claim, Petitioner asserts that he was provided ineffective assistance due to counsel's failure to pursue suppression issues.  Prior to trial, counsel apparently withdrew pending motions to suppress DNA test results, identification testimony, and an incriminating statement to the police by Petitioner.  Traverse at 12-13.  Petitioner alleges that counsel's "failure to present a defense" resulted in his decision to plead guilty.  *Id.*

Mr. Perlet testified regarding these motions during the post-conviction hearing as follows:

> The Court:  As you were about to start the trial, what was your defense going to be if you had gone to trial?
>
> The Witness: Didn't really have a good idea, sir. That's why I had been asking Mr. Jones, too, "What do you want me to do here?" As I'm sure you have - - I mean I discussed with him on August 8 about we have all these motions, challenging a photographic line-up, identification; because that had been our original thing, wrong person.  Then we had motions

11

> concerning the DNA test and its admissibility, suppression issues of his statements. There was one statement that was partially incriminating, as I recall. I said, "How do you want me to go on these?" He said, "No, we won't go on those," and I said, "All right." And I made him sign off on that. I filed that with the Court. He was that actively involved in calling the shots.

Trial Court Transcript, 2004-11-10, p. 55.

When a petitioner challenges a guilty plea based upon ineffective assistance of counsel, the deficient performance prong of the *Strickland* test requires proof of a lack of reasonably competent advice concerning the plea. *Hill v. Lockhart*, 474 U.S. 52, 58-59 (1985). Further, a petitioner must satisfy the prejudice inquiry by showing that the constitutionally ineffective performance "affected the outcome of the *plea process*. In other words . . . that there is a reasonable probability that, but for counsel's errors, *he would not have pleaded guilty* and would have insisted on going to trial." *Id.*

The trial court, in denying Petitioner's Rule 35(c) motion, held that "Mr. Perlet testified and the Court finds that trial defense counsel did not pursue suppression motions at the specific request of defendant." Answer at Exhibit A, Part 3, p. 28. As the Supreme Court has noted, "28 U.S.C. § 2254(d) gives federal habeas courts no license to redetermine credibility of witnesses whose demeanor has been observed by the state trial court, but not by them." *Marshall v. Lonberger*, 459 U.S. 422, 434 (1983); *see also Church v. Sullivan*, 942 F.2d 1501,1516 (10th Cir. 1991) (finding that a federal court sitting in habeas review must treat a state court's finding regarding witness credibility as a finding of fact entitled to deference). The post-conviction court explicitly found that Mr. Perlet was more credible than Petitioner, and therefore, accepted as true Mr. Perlet's testimony that he had withdrawn the motions to suppress based upon Petitioner's own

request. Answer at Exhibit A, Part 3, p. 28. "[D]eterminations of a factual issue made by a State Court shall be presumed to be correct," unless rebutted by clear and convincing evidence. 28 U.S.C. § 2254(e)(1). Here, Petitioner provides no clear and convincing evidence to rebut the finding that the suppression motions were withdrawn at his insistence. Because there is evidence that counsel withdrew the motions at Petitioner's own request, Petitioner can not establish "a reasonable probability that, but for" counsel's failure to pursue these suppression motions, "he would not have pleaded guilty and insisted on going to trial." *Hill*, 474 U.S. at 59. Petitioner does not provide any other specific facts to show that counsel coerced him to plead guilty. S*ee United States v. Gordon*, 4 F.3d 1567, 1571 (10th Cir. 1993) (holding that a petitioner's "mere allegation" that he would have insisted on trial but for his counsel's errors is insufficient to entitle him to habeas relief). Accordingly, the Court finds and concludes that the state court's conclusion was not contrary to, and did not involve a reasonable application of, clearly established federal law and Petitioner is not entitled to relief on his second claim.

    B.  Claim Three

In his third claim, Petitioner asserts that trial counsel coerced his guilty plea by misrepresenting the sentence he would receive. Petition at 16-17.

In addressing this claim, the appellate court found the following:

> Defendant also argues that the trial court abused its discretion when it rejected his claim that plea counsel was ineffective for coercing him to plead guilty. Defendant argues that, in rejecting this claim, the court unduly relied on his plea counsel's testimony and the transcript of the providency hearing, rather than on his own "consistent contention that his guilty plea was coerced by his counsel's representation that he would receive no more than a 24-year sentence." We perceive no abuse of the

13

>     trial court's discretion in this regard. [Citations omitted].  Here, the trial
>     court credited plea counsel's testimony that he urged defendant to plead
>     to a lesser sentence during the negotiation stages, but defendant refused.

Answer at Exhibit A, Part 1, p. 33.

"The longstanding test for determining the validity of a guilty plea is 'whether the plea represents a voluntary and intelligent choice among the alternative courses of action open to the defendant.'" *Hill*, 474 U.S. at 56 (citing *North Carolina v. Alford*, 400 U.S. 25, 31 (1970); *Boykin v. Alabama*, 395 U.S. 238, 242 (1969); *Machibroda v. United States*, 368 U.S. 487, 493 (1962)).  To succeed on this claim, Petitioner must again establish a reasonable probability that he would have proceeded to trial, but for counsel's alleged errors.  *Hill*, 474 U.S. at 56.  In addition, "a plea's validity may not be collaterally attacked merely because the defendant made what turned out, in retrospect, to be a poor deal."  *Bradshaw v. Stumpf*, 545 U.S. 175, 186 (2005).  "And in evaluating the validity of [Petitioner's] plea, we are reluctant to accord much weight to his *post hoc* re-evaluation of the wisdom of the bargain."  *Id.*

The record demonstrates that the trial court twice advised Petitioner at the time he entered the guilty pleas that the range of punishment for his crimes was a minimum sentence of 24 years and a maximum sentence of 96 years.  *See* Trial Court Transcript, 1988-09-13, at p. 16-17, 23.  Petitioner was advised of and indicated his understanding of the trial rights he was waiving by entering the pleas.  *Id.* at 12-15, 17-22.  Petitioner stated that there was no agreement with anyone or promise as to what the punishment would be, and also stated he was entering the pleas voluntarily, because he was guilty of the offenses charged.  *Id.* at 8-9, 23-25.  The pleas were entered in open court on September 13, 1988, and Petitioner exercised his right to be sentenced after a pre-

sentence report was submitted to trial court.  Sentencing on the convictions was not held until November 9, 1988, at which time, Petitioner was again advised of the range of punishment for each offense.  *See* Trial Court Transcript, 1988-11-09, p. 1.  There is nothing in the record that indicates Petitioner misunderstood or was misinformed as to the mandatory minimum or maximum punishment that could be imposed by the trial court at sentencing.  Neither is there any indication that Petitioner based his decision to enter the guilty pleas on any promise as to the sentence he would receive.  The record shows that Petitioner was advised several times by the trial court of the range of punishment for each offense and that he could be sentenced within this range on each offense.

Further, the trial court found "the testimony of Mr. Perlet on this issue more credible than the contradictory testimony of Defendant.  Mr. Perlet testified that he strongly encouraged Defendant to accept the forty year deal proposed by the People.  When Defendant finally decided to plead guilty days before the trial, the forty year offer was no longer available."  Answer at Exhibit A, Part 2, p. 28.  Therefore, the trial court found that "[t]he record does not support Defendant's contention that he was forced into the plea agreement at the last minute on the morning of trial. . . . Although both Defendant and trial defense counsel were surprised by the length of the sentences imposed, Defendant was well aware of the sentencing possibilities."  *Id.*  As previously set forth, a state court's finding regarding the credibility of a witness is a finding of fact entitled to deference by a habeas court.  *See Marshall*, 459 U.S. at 434, *Church*, 942 F.2d at 1516.  Further, such findings of fact are presumed correct unless Petitioner rebuts them by clear and convincing evidence.  28 U.S.C. § 2254(e)(1).  Petitioner has

provided no such clear and convincing evidence here. Therefore, Petitioner has not demonstrated that the alleged error by counsel prejudiced him, such that he would have proceeded to trial in the absence of the error. *Hill*, 474 U.S. at 56. Accordingly, the Court finds and concludes that the state court's conclusion was not contrary to, and did not involve a reasonable application of, clearly established federal law and Petitioner is not entitled to relief on his third claim.

### C. Claim Four

In his fourth claim, Petitioner argues that the trial court applied the incorrect standard when analyzing his claims of ineffective assistance of counsel. Petition at 17. He asserts that the trial court should have applied the standard set forth in *Hill v. Lockhart*, instead of the familiar *Strickland* standard. *Id.*

In analyzing this claim, the appellate court found the following:

> Nor are we persuaded by defendant's argument that the trial court applied an incorrect legal standard in assessing whether he was prejudiced by plea counsel's alleged errors. However, even if the court applied the wrong standard, because defendant is not entitled to relief under the standard he urges, any error is harmless.

Answer at Exhibit A, p. 33-34.

In *Hill*, the Supreme Court merely recognized that "the same two-part standard [set forth in *Strickland*] seems to us applicable to ineffective-assistance claims arising out of guilty pleas." 474 U.S. at 57. The Supreme Court also explained that "[i]n many guilty plea cases, the 'prejudice' inquiry will closely resemble the inquiry engaged in by courts reviewing ineffective-assistance challenges to convictions obtained through a trial." *Id.* at 59. Accordingly, the state court did not apply the incorrect standard because, in *Hill*, the Supreme Court did nothing more than extend the two-part

16

*Strickland* test to claims of ineffective assistance of counsel during a guilty plea. *See Hill*, 474 U.S. at 58; *accord Laycock v. New Mexico*, 880 F.2d 1184, 1187 (10th Cir. 1989). Moreover, the Court has applied the test set forth in *Hill* to Petitioner's above claims, and has determined that he is not entitled to relief under this standard. Accordingly, Petitioner cannot establish that he was prejudiced by the state court's failure to apply *Hill*, and the Court finds that this claim is without merit.

    D.  Claim Five

In his fifth claim, Petitioner argues that his right to due process was violated when the post-conviction hearing judge ordered that Petitioner's trial counsel be present and available to testify at the post-conviction hearing. Petition at 18-20. He further argues that the judge violated Petitioner's right to due process by conducting its own examination of the witnesses at the hearing. *Id.*

The Court finds that this claim does not challenge the validity of Petitioner's conviction or sentence, because it does not assert that Petitioner "is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). Instead, Petitioner seeks to challenge the state court's treatment of his post-conviction motion. However, there is no federal constitutional right to post-conviction review in the state courts. *See Pennsylvania v. Finley*, 481 U.S. 551, 556-57 (1987). A claim of constitutional error that "focuses only on the State's post-conviction remedy and not the judgment which provides the basis for [the petitioner's] incarceration . . . states no cognizable federal habeas claim." *Sellers v. Ward*, 135 F.3d 1333, 1339 (10th Cir. 1998) (citations omitted); *see also Steele v. Young*, 11 F.3d 1518, 1524 (10th Cir. 1993) (noting that a petitioner's challenge to state "post-conviction procedures on their face

and as applied to him would fail to state a federal constitutional claim cognizable in a federal habeas proceeding"). Because Petitioner's fifth claim challenges only the state courts' treatment of his post-conviction motion, and therefore does not implicate the validity of his conviction or sentence, this claim must be dismissed.

Accordingly, it is ordered:

1. Petitioner Fredrick Jones' Petition Under 28 U.S.C. § 2254 For Writ of Habeas Corpus ("Petition") (Doc. # 3) is denied.

2. This case is dismissed with prejudice.

Dated: October 20, 2009

BY THE COURT:

*[signature: Zita L. Weinshienk]*

United States District Judge